IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | |
| v. | : | No. 25-CR-155-1 (ABJ) |
| | : | |
| ANDRE FOSTER, | : | |
| | : | |
| | : | |
| *Defendant*. | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits its Memorandum in Aid of Sentencing.   For the reasons set forth below, the United States respectfully requests that the Court impose a sentence of 24 months' imprisonment, at the bottom of the guidelines range, as agreed to in the Plea Agreement, to be followed by 3 years of supervised release.

**FACTUAL BACKGROUND**

1.      On April 15, 2025, the Defendant, Andre Foster, was carrying a loaded black Glock model 19, 9mm handgun, bearing serial number BKVE124, in his right-side jacket pocket.   The firearm was loaded with a 17-round extended magazine containing 14 rounds of ammunition and one round in the chamber.   The Glock was also modified with a "Giggle switch" attached to the rear slide of the firearm, which allowed the Glock to function as a machine gun.

2.      At that time, the Defendant knew that he had been previously convicted of Attempted Distribution of Cocaine in District of Columbia Superior Court Case number 1995 FEL 010273, which is an offense punishable by more than one year incarceration.   The Defendant was sentenced to three to nine years of incarceration in connection with this conviction.   Additionally, the Defendant was convicted in 2008 of Theft: $500 Plus Value in Maryland District Court Case

number 5D00204440, for which he was sentenced to 2 years of incarceration, all of which was suspended.   The Defendant knew that he had previously been convicted of an offense punishable by a term of imprisonment of more than one year at the time of his arrest for the possession of the instant matter and that he should not be carrying a firearm.

3.       At some point that same day, the Defendant lost consciousness and EMT personnel from DC Fire and EMS and members of the Metropolitan Police Department (MPD) were dispatched to the 2500 block of Sheridan Road SE for a report of an unconscious male on the sidewalk.

4.       Upon arrival, they found the Defendant lying unconscious on the ground.   EMT personnel rendered aid.   As EMT personnel continued to assist the Defendant, he regained consciousness, and MPD officers observed the firearm protruding from the Defendant's right-side jacket pocket.



*Figure 1: Screenshot from officer's body worn camera.    The firearm is circled in red.*



*Figure 2: Screenshot from an officer's body worn camera. The firearm is circled in red.*



*Figure 3: Screenshot from an officer's body worn camera showing recovered firearm.*

5.      MPD officers then seized the firearm and detained the Defendant, who was subsequently placed under arrest once additional MPD officers arrived at the scene.

## PROCEDURAL BACKGROUND

6.      On May 2, 2025, the defendant was charged by Complaint with violating 18 U.S.C. § 922(g)(1) (Possession of a Firearm by a Person Previously Convicted of a Crime Punishable by More than One Year).

7.      On May 6, 2025, the Defendant was arrested based on this Complaint.

8.      On May 9, 2025, the Defendant moved for release which was subsequently granted and the defendant was released on Personal Recognizance.

9.      On May 28, 2025, a grand jury sitting in the District of the District of Columbia returned an Indictment charging the Defendant with violating 18 U.S.C. § 922(g)(1) (Possession of a Firearm by a Person Previously Convicted of a Crime Punishable by More than One Year).

10.     On June 9, 2025, the Pretrial Services Agency ("Pretrial") notified the Court of the defendant's violations of his release conditions, through a Pretrial Violation Report.   Pretrial filed additional Pretrial Violation Reports on June 30, 2025, August 21, 2025, September 26, 2025, and October 2, 2025.

11.     On October 10, 2025, this Court revoked the Defendant's bond based on continued and continuing pretrial violations.

12.     On October 24, 2025, the Defendant pled guilty to violating 18 U.S.C. § 922(g)(1) (Possession of a Firearm by a Person Previously Convicted of a Crime Punishable by More than One Year)

## I.      LEGAL STANDARD

Pursuant to 18 U.S.C. § 3553(a), the Court shall impose a sentence that is sufficient, but

not greater than necessary, to "reflect the seriousness of the offense, to promote respect for the

law, and to provide just punishment for the offense;" "to afford adequate deterrence to criminal

conduct;" "to protect the public from further crimes of the defendant;" and to "provide the

defendant with needed educational or vocational training."  18 U.S.C. § 3553(a)(2).  In addition,

the Court must also consider "the nature and circumstances of the offense and the history and

characteristics of the defendant;" the types of sentences available, the Sentencing Guidelines; any

pertinent policy statements; the need to avoid unwarranted sentence disparities; and the need to

provide restitution to any victims.  *Id.* § 3553(a).

The listed factors in 18 U.S.C. § 3553(a) include the following:

1) The nature and circumstances of the offense and the history and characteristics of the defendant;
2) the need for the sentence imposed –
   A) to reflect the serious of the offense, to promote respect for the law, and to provide just punishment for the offense;
   B) to afford adequate deterrence to criminal conduct;
   C) to protect the public from further crimes of the defendant; and
   D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
3) the kinds of sentences available;
4) the kinds of sentence and the sentencing range established for –
   A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –
      i)    issued by the Sentencing Commission . . . ; and
      ii)   that . . . are in effect on the date the defendant is sentenced;
5) any pertinent policy statement –
   A) issued by the Sentencing Commission . . . and
   B) that . . . is in effect on the date the defendant is sentenced
6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
7) the need to provide restitution to any victims of the offense.

Procedurally, after calculating the applicable Guidelines range, the Court should next

consider all the applicable factors set forth in 18 U.S.C. § 3553(a).  Indeed, the Guidelines

themselves are designed to calculate sentences in a way that implements the considerations

relevant to sentencing as articulated in Section 3553(a).  *Rita v. United States*, 551 U.S. 338, 348 (2007).

## II.    GUIDELINES CALCULATION

The Presentence Investigation Report ("PSR") correctly calculates the Defendant's Offense Level (17) and Criminal History Category (VI).  (ECF 25 at 7.)  The Government has agreed to recommend and move for a reduction of three total offense levels for the Defendant's timely acceptance of responsibility, (ECF 25 ¶ 22.)

The Defendant's Criminal History Category is I because the Defendant has no recent prior criminal history.  (ECF 25 ¶ 48.) It is important to note that the Defendant's criminal history is extensive (ECF 25 ¶¶ 35-76) despite his Criminal History score, as is clear from the nature of the offense here, which requires a previous felony conviction.

The Defendant's Guidelines range is therefore 24 to 30 months in prison.  (ECF 25 ¶ 126.) This period of incarceration is to be followed by a term of no more than three years of supervised release.  (ECF 25 ¶¶ 129-30.)

## III.    ARGUMENT

The Defendant's criminal history and continued issues while on release merits a sentence of 24 months' imprisonment, at the bottom of the guidelines range, as agreed to in the Plea Agreement, to be followed by 3 years of supervised release.   The Government's request is borne out by the Section 3553(a) factors, discussed below.

### 1.  The Nature, Circumstances, and Seriousness of the Offense

The dangerousness of the Defendant's crime is self-evident:  he was falling asleep in a public place while carrying a machine gun. Given his history of abusing narcotics, both before this arrest and while on release in this case, this suggests that he was likely under the influence   while

carrying this extremely dangerous weapon.

The nature of the Defendant's conduct here demands a significant sentence of incarceration.

### 2. The Defendant's History and Characteristics

The Defendant's lack of a criminal history score conceals his true criminal history which is extensive and involves guns, narcotics, and violence going back to 1994 when the Defendant was 18. The Government also refers the Court to the PSR (ECF 25 ¶¶ 35-69) for additional context. Since then, the Defendant has rarely gone more than a couple of years without being arrested or convicted of something.

The Defendant also appears to be in the throes of a powerful long-term addiction to narcotics that he is unable to tame by himself, even when it threatens his freedom. (*See* ECF 25 ¶ 105 ("He tested positive for opiates on over 100 occasions between May 15, 2003, and March 7, 2015.")). In this very case, he was repeatedly brought before this Court for violating his release conditions by testing positive for fentanyl and marijuana. The defendant actually missed one such hearing when the Defendant could not be woken up, required immediate medical treatment, and the Court therefore continued the hearing. This is troublingly  similar to the very same behavior for which he is charged in this case: possessing a handgun with a machine gun switch attached, while unconscious on a public street.

Here, the defendant's history also requires a significant period of incarceration.

### 3. The Need to Promote Respect for the Law and Deterrence

The defendant's repeated arrests and convictions have done little to discourage his behavior. A significant sentence is required to both deter him from future violations and to provide him with the opportunity for substance abuse treatment from which he would clearly

benefit.   In this very case, the Defendant proved that he is incapable of pursuing substance abuse

treatment when left to his own devices.   A significant period of incarceration would provide him

with the substance abuse treatment that he so clearly needs.

Such a sentence would be consistent with other similarly situated defendants and would

match the "the median length of imprisonment imposed" in such cases.   (ECF 25 ¶ 146.)

### IV.    CONCLUSION

The  Defendant's  prolific  long-term  criminal  history  and  need  for  deterrence  and

treatment as discussed above, all demonstrate the need for a significant period of incarceration,

to be followed by the full three years of supervised release to include required drug testing and

substance abuse treatment.   Therefore, the government believes that a sentence of 24 months,

which is at the bottom of the sentencing guidelines, as was agreed to in the Plea Agreement, is

appropriate here.   Such a sentence serves the interests of justice and appropriately balances the

sentencing factors articulated under 18 U.S.C. § 3553(a).


Respectfully Submitted,

JEANINE FERRIS PIRRO
United States Attorney

By:        _/s/ Peter V. Roman_
          Peter V. Roman
          Assistant United States Attorney
          D.C. Bar No. 984996
          U.S. Attorney's Office for the District of Columbia
          601 D Street NW, Washington, D.C. 20530
          (202) 252-7115
          Peter.Roman@usdoj.gov